We are here for oral arguments. I'm Chief Judge Wood. We have Judge Mannion and Judge Caney on the phone, and I understand all counsel are on the phone. So our first case for today is Standard Security Insurance v. FCE Benefit Administrators, No. 19-2336, and I believe Mr. Killian should be ready. Yes, Your Honor. You may proceed. Thank you, Your Honor. Good morning, and may it please the Court, Paul Killian for the appellant, FCE Benefit Administrator, Inc. This appeal arises from competing petitions to confirm and vacate an interim award and a final award in a phased arbitration. The underlying contract dispute is between the insurers and a third-party administrator, that's FCE, under an insurance services and business development agreement called the ASA, Administrative Services Agreement, by the parties. And the principal question presented is whether a district court addressing a Section 9 petition to confirm under the Federal Arbitration Act can look beyond the face of a final arbitration award to incorporate an earlier interim award that is not mentioned in the final award. So, Mr. Killian, can you hear me? This is Judge Wood. It's called the partial final award. It's not called an interim award. And when you look at the way the proceedings seem to go on, from the transcript and everything else, it does seem that the arbitrators thought that they were completely wrapping up the issues from Phase 1 in that partial final award, and they wrapped up the issues from Phase 2 in the award that you would like us to think is the only final award. But that's not really how they phrased it. Well, two responses, Your Honor. First, the final award, we think, completely resolves the case. It's a standalone award. It denies recovery to both sides. But why do you know it's standalone? Why are you calling it standalone when it's preceded by the partial final award? And there's no indication in the Phase 2 award that it's intended to be an integrated standalone document. They could easily have said that if they wanted to, but they didn't. They could easily have said that, yes, and they could easily have also incorporated by reference the interim award, and they didn't do that. And instead, they have a provision that says all other claims for relief by the parties are denied. In other words, any claim for relief that's not addressed in the final award is denied. But there's another issue as well with the interim Phase 1 award, and that's that Judge Guzman, in his March 2019 order, held that that award was non-final, and he terminated the case based on lack of subject matter jurisdiction. But why wasn't Judge Guzman talking about finality in the sense of 28 U.S.C. section 1291? It's clear that there was more work for the arbitrators to do, but that happens a lot in ordinary civil litigation. If you have multiple claims in multiple parties, sometimes a district court will resolve some claims of some parties and not issue a Rule 54B judgment. So although it's finally resolved for those claims, the case is not yet ready for appellate review. And why isn't Judge Guzman saying much the same thing, although rather than appellate review, he's talking about consideration of the arbitral award? Only part of it's been done. Well, that award that Judge Guzman issued was a final and appealable award, and we cited a number of decisions from this circuit supporting that point. And because of that, it carried with it preclusive effect. Something had to happen. And now, yes, that award did say that it was without prejudice to reinstatement when the arbitration was completed, and the insurers went in and reinstated the case, but they needed to do something else. They needed to somehow change that award that was out there, that order from Judge Guzman that was out there. In addition, the parties' agreement, the ASA, doesn't contemplate multiple final awards. It speaks in Section 18 in terms of the final decision of the arbitrators in the singular. But again, the arbitration is supposed to be flexible. And looking at these awards, the partial final award, Phase 1, the final Phase 2 award, the arbitrators carefully bifurcated what issues they were going to address in each part of these proceedings, and there's some procedural history that also explains why they may have done it this way. And again, I'm just having trouble seeing why the arbitrators needed to write the final award as a consolidated Phase 1 and Phase 2 award instead of letting them be as they are. Well, one of the primary problems with that is that Judge Guzman's March 2019 order remained, and that was never changed. There was never a Rule 59 motion brought. There was never a Rule 60 motion brought. There was nothing done to change Judge Guzman's order. What do you think needed to be done? What do you think needed to be done to change that order? Because your opponents say, look, he said the arbitrators weren't finished with it. They did finish after Phase 2. At that point, all claims of all parties were resolved, and it was ready to move to some sort of judicial recognition and enforcement or confirmation-type proceeding. So I'm not sure how Judge Guzman needed to change the first order, his order. Well, we think that the jurors should have gone in and done something. Again, a Rule 59 e-motion might have fixed it, something to get out from under that order, and they didn't. They could have also gone back to the panel and sought clarification on the final order, and they didn't do that. And they could have also brought a Section 11 request to modify under the FAA, and they didn't do that. This is just a Section 9 confirmation order, and they're asking that it be – that is a limited procedure. They're putting the award in front of the court, and they're asking that it be confirmed. But what they're doing here is they're trying to go behind that order and say that it was really intended to incorporate the interim award. Now, these awards – Could I ask you, Mr. Killian, is it your position that we should not look at the transcript that your opponents attached to their filings in order to understand better the scope of Phase 2? Because it does seem pretty clear that the arbitrators were not willing to allow you to reopen issues that they had resolved in Phase 1. Yes, it is our position that this shouldn't be an exercise in parsing the arbitration record, that under this procedure, this Section 9 confirmation procedure, it's just the four corners of that award that are looked at, and that – there's no ambiguity on the face of the final award. It ends the arbitration with it taking up an award for both sides, and it's a complete determination of all the issues. Now, it's a short award. It's only two pages long, but that's another problem with this. These are unreasoned awards. Both the interim award and the Phase 2 award are unreasoned awards. Well, as you know, arbitration is entitled to do that. You know, some people prefer not to go to arbitration for that reason, but arbitrators don't have the same obligation the courts do to explain themselves. But I'm looking at the final Phase 2 award, and it's really quite clear that it's addressing only Phase 2. It hereby renders its final Phase 2 award as follows, and then it has these five numbered paragraphs. So isn't it a stretch to read this as also encompassing Phase 1 when it really singles out Phase 2? We don't think it is a stretch. When it ends with the phrase, all other claims for relief by the parties are denied. But why doesn't that mean within Phase 2, since that's the prelude? Hereby renders its Phase 2 award as follows, colon, and then you get down to the paragraph 4 that you're quoting. Why does that somehow expand back out beyond Phase 2? Because it has no words of limitation in that. Aside from the prelude, yeah. Okay. We know that the Phase 1 issues were still in play in Phase 2. Well, I think that's contested. I mean, I realize that's your position. I thought that was contested. It is contested. It is contested. But it's not contested that the Phase 1 issues under a motion to reconsider and motion to modify were in play in Phase 2. Weren't those motions denied by the arbitrators? Well, the motion for reconsideration was denied. The motion to modify was not in the final order. At least the final order, it's a very short February 28th email. It only speaks to the motion to reconsider. It doesn't say that the motion to modify. And certainly those motions were in play even through the closing argument of Phase 2. And counsel for FCE made the point of making sure that those motions were still alive. Well, I will interject that the arbitrators repeatedly rejected FCE's attempts at the Phase 2 arbitration hearing to rehash the issues in 1. And also there's a minor question of who pays the catering bill for the Phase 1 arbitration hearing. It's not a big issue, but nevertheless they were clearly different. Phase 1 was done. It was done in part. The insurers put in another issue that was in Phase 1 and they moved it into Phase 2. And we certainly had the motion to reconsider and the motion to modify filed in front of the panel in Phase 2. So it was not a clean division here. It was one continuous arbitration and it ends with the final order. Now, let me turn to the interim award. And we raised two issues there. Both relate to Section 1084 of the FAA. First, the arbitrators awarded damages to insurers in the interim Phase 1 award based on indemnity. And the parties never agreed to arbitrate indemnity claims. So under the rules of the AAA, wasn't it up to the arbitrators to construe Sections 17, 18, and 19 of the relevant agreement and see what, in fact, the scope of this agreement is? Because what the arbitrators did when they looked at those sections, I'll phrase it a little differently, I think they regarded arbitration as required, as mandatory for everything except the Section 17 issues. But it was optional for those issues. There's no language saying it's forbidden. The only thing that it says is if the parties choose to go to court, they may on that. But somebody's got to make a move to go to court under Section 19. And if you do, then you have to be in Dallas County, either in the federal or the state courts. But I don't see any language in any of those sections that forbids arbitration. It just doesn't compel it. Well, it doesn't compel it. It forbids it by silence that it's not an option. Why is your inference from silence forbidding it, though, instead of just making it permissive? Well, the two sections in 18A we think work together. If a party wants to resolve a non-Section 17 dispute, the only option that's provided in Section 18 is arbitration. And if a party wants to resolve a Section 17 dispute, the only option that's provided under the language is Section 19, which is adjudication. We think the two of them work together. We don't see this nonsensical gap in the wording that Judge Guzman found. We think it's a clear clause that ruled that. There's another issue with applying the AAA rules to Section 17. First, there's no agreement here. There's no stipulation among the parties that the AAA rules apply. And the agreement says the AAA rules or similar rules, so it's a little bit unclear. The agreement also says that Texas procedural rules applies to the arbitration. But the carve-out in Section 18 that carved out Section 17 indemnity claims from the arbitration provision also carves out those claims from application of the AAA. And that provision says, in the event of any dispute between the parties which arises under this agreement, except for a dispute arising under Section 17, such dispute shall be settled by arbitration in accordance with the rules for commercial arbitration of the AAA. Right. Could I just interject, Mr. Killian? If you want rebuttal time, you're now at about two and a half minutes. Yes. Yes, I do. We have one other issue on embezzlement, and we'll have to submit that on the papers. Thank you. Thank you very much. Mr. Noser. Yes, this is Michael Noser. Can everyone hear me? Yes. Yes. Thank you. May it please the Court, my name is Michael Noser on behalf of the plaintiffs' apologies, who I will call the insurers. I think the first thing we should discuss is the fact that these petitions under the Federal Arbitration Act are governed by the rules for the making of motions. That's what Section 6 of the Federal Arbitration Act says. And in the Wellpoint case, the district court decision in Wellpoint that's in the record, that court points out that a court deciding such a motion should consider the record of the arbitration, including any relevant portions of the transcript and any written submissions in the form of objections, affidavits, etc., by the parties. So it is certainly appropriate for the district court to have considered the record in the arbitration. And that record could not be more clear, as the court has already noted this morning, after the Phase 1 award was issued. Well, first the Phase 1 award and the Phase 2 awards became necessary because FCE wanted to amend its claim to near the Phase 1 hearing and sought an extension of the proceedings. In order to accommodate FCE, it was the panel's determination not to refuse FCE the right to make a belated amendment to its proceedings, but to have a Phase 2 so that FCE's position could be heard separately with enough time. So the Phase 1 and Phase 2 were a direct response to FCE's request. At no point has FCE ever argued that bifurcation was inappropriate or impossible. And indeed, the governing commercial arbitration rules 32B of the AAA rules specifically and expressly allow bifurcation. So that's what we did. And in the Phase 1 hearing, my client's claims were heard and decided, and a Phase 1 award was issued. After Phase 1 was in the books, then FCE turned around and in Phase 2 tried to reopen Phase 1. And the panel has that in front of – has the record in front of it. But I think what's very important to say is that FCE itself acknowledges that it should have brought up this evidence in the Phase 1 proceedings, but they made a strategic call not to. And now that that strategic call backfired on them, they decided that they wanted to bring it up in Phase 2 and have another bite of the apple. So, Mr. Noser, why isn't it – why isn't it reasonable, though, to look at the final award that the arbitrators issue and understand that to encompass everything? When they say all other claims for relief by the parties, they didn't say all other Phase 2 claims. They didn't say all claims, you know, entertained since January 1st or whatever. They say all other claims for relief by the parties. Shouldn't – is this something we should get clarification from the arbitrators on? Well, I think – I think certainly the court could ask for that clarification and there are provisions in the Federal Arbitration Act that allow it. But I think that the Phase 1 award has exactly the same language. And obviously, there was no Phase 0 award that could be superseded or overturned. All that that statement is saying is, is that in respect of the matters decided in this phase, we've decided everything and all other claims are denied. It is the arbitrators' – we see this sometimes in court decisions and it is the arbitrators' perhaps somewhat amateurish way of trying to follow the court proceedings. But the Phase 2 award claiming on its face makes reference only to Phase 2 proceedings, the newly asserted claims in the Phase 2 proceedings. It even provides the dates of the hearings. There's nothing in the Phase 2 award and there's nothing in the record that supports the notion that the arbitration panel decided to reopen or, in their words, redo or revamp Phase 1. And Judge Guzman found as much of the week that those are findings of fact based upon his inspection of the record. By the time FCE gets to the reply brief, it no longer argues that there are any disputes about facts. It argues that the case doesn't turn on facts. If you take FCE at its word there in its reply papers, that means that these facts are not disputed and that all of this divot car and that Judge Guzman's conclusion on it is clearly not clearly erroneous. So let me ask you this, Mr. Noser. You can correct me if I'm wrong, but it's my understanding that FCE asked the panel to issue a reasoned award, to issue an award that had some explanation for the conclusions that it reached and that your clients, you and your clients, objected to this request. If that's correct, then why did you object? Any kind of reasoned award would have disambiguated this immediately. It is not correct that I objected. The position that I took in this arbitration and I take in all arbitrations is it's up to the arbitrator to decide whether or not they want to state their reasons. Some arbitrators feel as if stating their reasons in great detail only leads to court challenges of their arbitration awards and they're loath to do so. I never make it my business to tell the arbitrator how to write their award. I only ask them what it is that they should find. How they express themselves has to be up to them. And I think in this case, they did not issue an interim award. They issued a phase one partial final award. And their meaning in that couldn't be more clear. It's part of their job and on that part of their job it's final. I do not believe that anything that Judge Guzman did when we moved to confirm that phase one award before the arbitrator's task was completed in any way undermines or nullifies or vitiates an otherwise perfectly confirmable phase one award. All that Judge Guzman said in that decision was that he didn't have jurisdiction to hear the matter and he dismissed for lack of jurisdiction, his own jurisdiction. He didn't say that he had no jurisdiction, but he also finds the partial final award not final. Instead, he just said, I don't have jurisdiction. And in his decision, he invited the parties to come back and reinitiate the arbitration when the arbitrators had finished phase two. There was never any judgment issued on that first award by Judge Guzman. While FCE in its reply papers makes the argument for the very first time, never before having been made until the reply, that my client should have appealed that, there was no appealable paper. All Judge Guzman decided in that case, and I'm referring to his second decision where he explains what he decided. And he said that the phase one award was not final for purposes of review by the court because the panel had not completed its entire assignment, but it was final as to discrete issues of which the panel disposed. And then he cites the WellPoint case and says that this was a single, the court regards the phase one and phase two awards which stem from the same arbitration demand as a single comprehensive award that did not become final for purposes of judicial review until the entry of the phase two award when the panel was finished with its assignment. So if this court allows the prospect that arbitrators can decide things in a bifurcated fashion, which I think is generally well accepted throughout the United States, and I am aware of no authority to the contrary, certainly the AAA commercial rules permit it, then you will naturally have as a consequence two awards. The labels that the arbitrators affix to the awards are not really that consequential. What's consequential is, what was the arbitrator's intent? Did they intend or evidence an intent to reopen the arbitration? And on this record, there is no evidence whatsoever, as Judge Guzman found, that the arbitrators intended to reopen phase one and phase two and re-decide matters. So Mr. Noser, let me move us on to one of the other issues that we haven't touched on very much. Mr. Killian mentioned it just as he was wrapping up. I mean, talk about labels. I mean, calling an overcharge of an interest, of an assessment embezzlement is a pretty strong thing to do. Embezzlement, to my knowledge, exists only in the criminal law. Sometimes people overcharge and they're told they shouldn't, and maybe that's what was happening here. But embezzlement? Very strong word indeed. I do not deny it. But there is no dispute that this is an arbitrable claim. FCE does not deny that it was an arbitrable claim. And the evidence in the arbitration is set forth in our record was that my clients first became aware of this when their own auditors reported this as potential fraud. And as that evidence was coming into the arbitration hearing, one of the arbitrators remarked, I think the proper term would be embezzlement because they already had the money. So this comes up. Am I correct? This comes up because the original agreement has that, whatever it was, 5.5 percent. I forget the exact numbers. But it also said unless the parties agree otherwise, and it's your position that the parties did agree otherwise to the lower, the 4.3 or whatever percent. And then without telling you, the FCE people reconsidered and just took the extra $550,000 without notice. Is that more or less what happened? That's exactly what happened. And there was a lot of time spent at the arbitration about whether they needed to tell us or whether they were authorized to take it or whether we had actually agreed to 4.3 percent as opposed to 5 percent, 5.5 percent. That was fully vetted in the arbitration and the arbitrators found for insurers and found against FCE. The FCE says the panel got that, the arbitrators got that wrong, but that's not an arbitration panel getting it wrong. And we don't think they did get it wrong, but an arbitration panel getting it wrong is not grounds to vacate an arbitration award. The arbitration panel applying or affixing the wrong legal name to a category of damages. And if you look at the phase two, the phase one award, all it says is category of damages, and it's in a chart with boxes. So they fit summaries of words for the claim, summaries of the claim in those boxes. And for that one, they elected to put the word embezzlement. The phrase embezzlement was never challenged by FCE throughout the arbitration. The panel is only after the phase one award that FCE challenged that phrase. It may be an inappropriate legal phrase, but it is not a basis to vacate an arbitration award on a claim that is admittedly arbitrable. So it just should have been called an overcharge or something like that. It doesn't have the criminal consequences of actually being indicted for and convicted of embezzlement. That's correct. The arbitrators aren't trying to throw anyone in jail. They just use their own shorthand. The umpire of the arbitration panel is not a lawyer. And as this court well knows, the arbitrators' awards can't be overturned merely because they get the law wrong. I'm not here defending the phrase or the term, but I am defending their action in applying the contract, interpreting the contract, deciding the matter according to the terms of the contract, and awarding only contract damages. Lastly, on the indemnification claim, if I can speak to that, the provisions of Section 17, 18, and 19 we think are very clear. The default is that everything is arbitrated. However, there is an option, as the court has said, or potential for litigation of a Section 17 claim for indemnification. However, Section 18 is very clear. It says, should a dispute arise under Section 17, either party may elect to invoke Section 19, may elect to invoke court litigation. It is undisputed that FCE never elected to invoke court litigation until after the Fins 1 award was issued and they had lost on the indemnification claim. They say that you're the one who would have been electing this, though, and that they had no duty to run off into court on this claim. Even if there was, I believe, they say that they can't waive the right to litigation. I don't know that they're saying I have the obligation to go to court. I think they're saying that they can't waive their right to litigation. I think they're arrogating to themselves a right that they don't actually have, because this provision is very plain. Not only that there must be an invocation of litigation, but the time at which it should occur. Should a dispute arise, either party may elect to invoke Section 19 below. They are claiming they didn't waive that right, but that right has a time element to it. Should a dispute arise, then they can elect. It does not say they can elect to litigate after they lose the arbitration. If you take their argument to its natural conclusion, then they could litigate a perfectly arbitrable claim, have a jury trial, lose the jury trial, appeal to this court, lose that appeal, and then turn around and say, oh, I have this no waiver clause. I actually can arbitrate this claim, and none of the court proceedings matter anymore, because my right to arbitrate that claim can never be waived. So under some rules of arbitration that I'm familiar with, there comes a moment early on in the arbitration when the arbitrator will set out terms of reference or contested issues or whatever they want to call it, something like that. So does something like that happen under the AAA commercial rules or whatever set of similar rules you were using for this arbitration? I'm just trying to get at how early you think they should have known that this issue was in play. The demand for arbitration includes all the claims, and as Commercial Rule 7, I think it's B, it might be A, the Commercial Arbitration Rules specifically provides that in the answering statement, the party who might challenge arbitration must do so at that time in their answering statement to the arbitration. It is 7A, Rule 7A of the Commercial Arbitration Rules, and that normally is the ritual or the protocol in arbitrations. The challenges to the arbitrability of a claim are brought right away because the purpose of the arbitration is to make sure that the costs are managed. There was a perhaps humorous reference to catering charges, but costs are a very key focus in arbitration. It's one of the reasons parties want to participate in arbitration is in the hopes that they can get things done more quickly and with controlled costs. Now, that did not succeed perhaps in this case, but that is the focus. And the idea that you can arbitrate an entire matter for over a year or an entire claim for over a year and then decide after you lose on that issue that arbitration didn't matter is completely antithetical to the purposes of arbitration. And it's certainly antithetical to the very strong language of this court in the environmental barrier of the slurry case in which the court said that the tactics that we're discussing right now, this court cannot accept for sound policy reasons. It's wasteful of the arbitrator's time. It's wasteful of the court's time. It's wasteful of the party's time. And there is no good policy in allowing somebody to get an award and then decide whether they like the arbitration and want to abide by that award. Unless the court has questions, I think I'm concluded. I don't have anything. All right, fine. All right. Thank you very much, then, Mr. Noser. Anything further, Mr. Killian? Yes, Your Honor. Very quickly. Let me just respond to several points that Mr. Noser raised. First of all, he refers to the Phase 2 award as amateurish, but this is his order. The panel used the draft that the insurers submitted. That's at ECF 48-12, Exhibit 30. Now, he had himself winning on the Phase 2 issue that the insurers raised, but other than that, that's their language. And it's not lost on us that the party that blocked the attempts to get a reasoned award from this panel can't live with the four corners of the award that they submitted to the court. And he can't make his arguments without trying to go back into the record and put the reasoning in that he blocked. He says he didn't object it. We gave the sites. Let the court make the decision if it's an objection. He opposed our request for a reasoned award that we made several times. Let me turn now quickly to the embezzlement issue. This was an outrageous overreach. He paints a picture as if the panel came up with that phrase without any help from him. Well, that phrase was never once, embezzlement was never once mentioned in any of the pre-arbitration filings that the insurers made. And when the umpire in an offhand comment during a witness examination used the phrase, Mr. Norzer pushed back on it and pushed back on that characterization. It's hardly putting us on notice that there was an embezzlement charge. FCE had an absolute right under the ASA to take its administrative fee, which was 5.5% under the agreement, out of the account that it managed. And the only way the arbitrators could have awarded those damages was to ignore the contract. Not only was there no evidence to support the criminal charge... Isn't there a finding of fact, though, that the... Don't the arbitrators find as a fact that there was an agreement to reduce that fee to 4.3%? I know you don't think that's right, but the arbitrators found that. Isn't that part of their job to interpret the way the contract was being administered? Your Honor, we don't know what the arbitrators found because we didn't have a reasoned award. That's why we kept asking for a reasoned award. We took a look at that interim Phase I award, and there were many, many questions. We don't know what they found. They're trying to backfill it by going into the record and making arguments to put some reasoning in that isn't in the award. Again, an unreasoned award that they brought. The... FCE, because this embezzlement charge was raised for the first time in closing argument, we never had a chance to respond to it. And Mr. Norris says that we didn't dispute arbitrability. Well, it was raised for the first time in closing argument. We're disputing it now. It's a legal issue. It's a contract interpretation issue, and this contract only allows arbitration of disputes which arise under disagreement. Okay. It doesn't... Yes? You're over time, so you're going to have to finish up. Okay. Well, we ask that only the Phase II final award be affirmed and that the interim award be dated. All right. Thank you, Your Honor. Thank you very much, then. Thanks to both counsels. The court will take this case under advisement.